IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

KAREN ELIZABETH DOUGLAS                                              PLAINTIFF

v.                Civil No. 3:15-cv-03006-MEF

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                       DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Karen Douglas, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the Commissioner) denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

On March 15, 2012, the Plaintiff filed her application for DIB alleging disability since January 30, 2012, due to osteoarthritis, degenerative disk disease ("DDD"), headaches, memory loss, postural orthostatic tachycardia syndrome ("POTS"), fibromyalgia, chronic fatigue syndrome, carpal tunnel syndrome ("CTS"), incontinence, headaches, and chronic pain syndrome. (Tr. 148-161, 216-217, 242, 246-262, 269, 277-280, 501-502) Plaintiff's application was denied

initially and on reconsideration. An Administrative Law Judge ("ALJ") held an administrative hearing via video conferencing on May 31, 2013. (Tr. 60-91) Plaintiff was present and represented by counsel.

At the time of the administrative hearing, the Plaintiff was 49 years old and possessed a high school education, two years of college credit, and an insurance license. (Tr. 50, 243) She had past relevant work ("PRW") experience as a clerical worker and production assembler (Tr. 49, 66-70, 207-214, 230-240, 244)

On August 16, 2013, the ALJ concluded Plaintiff's osteoarthritis, degenerative disk disease, carpal tunnel syndrome, diabetes, and depression were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 41-46) After partially discrediting the Plaintiff's subjective complaints, the ALJ determined the Plaintiff retained the residual functional capacity ("RFC") to perform light work except:

> she can climb ladders, ropes, scaffolds, ramps and stairs at most occasionally; can balance, stoop, kneel, crouch, and crawl occasionally; she can handle and finger frequently on a bilateral basis; and, she can perform work in which interpersonal contact is incidental to the work performed, the work is learned by rote with few variables and limited judgment, and the supervision involved is simple, direct, and concrete.

(Tr. 46) With the assistance of a vocational expert, the ALJ then concluded the Plaintiff was capable of performing her past relevant work as a production assembler and could perform work as a mail sorter and routing clerk, power screw driver operator, and extrusion press operator. (Tr. 49, 51)

The Appeals Council denied the Plaintiff's request for review on November 18, 2014. (Tr. 1-7) Subsequently, Plaintiff filed this action. (ECF No. 1) This case is before the undersigned by

consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (ECF Nos. 11, 14)

**II.      Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

### III.   Discussion:

Of particular concern to the undersigned is the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical

evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

When formulating a claimant's RFC, the ALJ must (1) include a narrative discussion of how the evidence supports each conclusion and cite specific medical facts and non-medical evidence; (2) assess the individual's ability to perform sustained work activities in a work setting on a regular and continuing basis; and, (3) describe the maximum amount of each activity the person can perform. SSR 96–8p. Further, the ALJ must base the assessment on all of the relevant evidence and build "an accurate and logical bridge" between the evidence and his decision. *St. Clair v. Colvin*, 2013 WL 4400832, at *2 (W.D. MO., Aug. 14, 2013) (*citing Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)).

In the present case, the ALJ concluded that the Plaintiff suffered from severe carpal tunnel syndrome ("CTS"). He also found, "in light of subsequent positive [electromyography ("EMG")] findings for CTS on the left and positive Phalen's and Tinel's sign bilaterally," the Plaintiff would be limited to frequent handling and fingering bilaterally. (Tr. 47) While we agree that the Plaintiff's carpal tunnel constitutes a severe impairment, we do not find a sufficient logical bridge between the medical evidence and the RFC determination. "[T]he decision does not discuss the degree to which Plaintiff can reach, handle, finger, or feel objects." *St. Clair v. Colvin*, 2013 WL 4400832, at *2 (W.D. MO., Aug. 14, 2013). And, we note that repetitive tasks that require bending of the wrists or grasping with the hands, including typing, cutting, sewing, playing a musical instrument, overuse of small hand tools, and use of vibrating tools are factors that can contribute to the development of CTS. *See* PHYSICIAN'S DESK REFERENCE, *Carpal Tunnel Syndrome*, http://www.pdrhealth.com/diseases/carpal-tunnel-syndrome/diagnosis (Last accessed March 9, 2016). It seems reasonable that an individual who is undergoing treatment for CTS would need to

avoid these activities, which do not just involve the rapid and repetitive use of their wrists, in order to prevent further complications. Accordingly, remand is necessary to allow the ALJ to reassess the limitations imposed by Plaintiff's CTS.

We also find that remand is necessary to allow the ALJ to reconsider the Plaintiff's subjective complaints and the assessments of her treating doctors. The ALJ discounted the Plaintiff's credibility and the assessments of her treating physicians, stating they were not supported by the overall record. Our review of the record suggests otherwise. While we would agree that objective studies were initially unable to account for all of the Plaintiff's complaints, more recent testing and examinations have offered additional answers. An MRI of the Plaintiff's lumbar spine dated 2012 showed a broad based posterior disk protrusion causing mild bilateral foramen narrowing at the L4-5 level, a right lateral annular fissure in the disk at the same level, a central disk protrusion, and degenerative changes in the lumbar spine. (Tr. 678, 743) Similarly, a 2012 MRI of her cervical spine revealed foramen stenosis at the C7-T1 level, especially on the right, caused by degenerative changes in the facet joints at this level and minimal degenerative disk disease. (Tr. 763-764, 944) Further, a study of her thoracic spine documented mild diffuse degenerative disk disease with a focal shallow right paracentral disk herniation at the T7-8 level. (Tr. 763-764, 944)

The record also contains medical records from doctors specializing in a variety of specialty areas including neurology, pulmonology, rheumatology, and pain management. Pain specialist, Dr. Diane Cornelison "easily" documented 11 of the 18 possible tender points necessary for a diagnosis of fibromyalgia. (Tr. 1139-1146). Rheumatologist, Dr. Ronald Rubio's examination documenting fibromyalgia-like symptoms and diagnosing myalgia, myositis, and chronic pain provides further support for her assessment. (Tr. 1054-1056, 1057-1058) Several other examiners

also questioned whether an underlying inflammatory disease or fibromyalgia might be contributing to her symptomology. (Tr. 774-775, 1054-1056, 1121-1125, 1126, 1155) And, physical exams have consistently documented diffuse tenderness and limitation in many of the areas commonly associated with fibromyalgia. Accordingly, because the ALJ did not consider the Plaintiff's diagnosis of fibromyalgia, we must remand the matter for further consideration. On remand, the ALJ is directed to address the Plaintiff's fibromyalgia and its impact on her ability to perform work-related tasks. In so doing, the ALJ is reminded "[f]ibromyalgia is a common nonarticular disorder of unknown cause characterized by generalized aching (sometimes severe); widespread tenderness of muscles, areas around tendon insertions, and adjacent soft tissues; muscle stiffness; fatigue; and poor sleep." THE MERCK MANUAL 375 (19th ed. 2011). Any fibromuscular tissues may be involved, but fibromyalgia is especially prevalent in the occiput, neck, shoulders, thorax, lower back, and thighs. *Id*. The symptoms of fibromyalgia are generalized soft-tissue pain that is disproportionate to the physical findings, negative laboratory results despite wide spread symptoms, and fatigue. *Id.* Its cause is not known, and there are no laboratory tests to determine its presence or severity. *Id.* Fibromyalgia treatment includes "exercise, local heat, stress management, drugs to improve sleep, and analgesics." *Id*.

The Eighth Circuit has held, in the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity. *Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003); *See Kelley v. Callahan,* 133 F.3d 583, 588-89 (8th Cir. 1998).

**IV.   Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to

sentence four of 42 U.S.C. § 405(g).

DATED this 11th day of March, 2016.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE